**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | | |
|---|---|---|
| WINNEMUCCA INDIAN COLONY et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | 3:11-cv-00622-RCJ-VPC |
| | ) | |
| UNITED STATES OF AMERICA ex rel. | ) | **ORDER** |
| DEPARTMENT OF THE INTERIOR et al., | ) | |
| | ) | |
| Defendants. | ) | |
| ───────────────────────────── | ) | |

This case arises out of the refusal of the U.S. Department of the Interior ("DOI") to recognize a government of the Winnemucca Indian Colony (the "Colony") and the interference of the Bureau of Indian Affairs ("BIA") with activity on colonial land. The Court issued a temporary restraining order ("TRO") ordering the BIA to grant interim recognition to some person or persons but not enjoining any BIA activity on Colony land. The Court then granted a preliminary injunction in part, "enjoin[ing] the BIA from interfering with activities on colonial land by Wasson and his agents" and noting that "[u]ntil some tribal court says otherwise or Bills appears and is heard to object (making the Council's vote 1–1), Wasson represents the will of the Council under the [Indian court's] ruling."

Four motions and a proposed order are pending before the Court. First, Linda Ayer has moved to intervene. Second, Plaintiffs have asked the Court to strike Ayer's opposition to the already granted motions for preliminary injunctive relief. Third, Plaintiffs have submitted a proposed preliminary injunction order. Fourth, Defendants have moved to dismiss. Fifth,

1    Plaintiffs have moved to amend the Complaint.  For the reasons given herein, the Court grants

2    the motions to intervene and the motion to amend, and denies the motion to strike, the proposed

3    preliminary injunction order, and the motion to dismiss.

4    **I.      FACTS AND PROCEDURAL HISTORY**

5            **A.      Tribal Recognition**

6            In 1972, the Colony adopted a constitution pursuant to the Indian Reorganization Act.

7    (Compl. ¶ 1, Aug. 29, 2011, ECF No. 1).  In 1986, the Western Nevada Agency of the BIA

8    ("WNA") took control of the Colony's assets and withdrew its recognition of the colonial

9    government, (*id.* ¶ 2), but by 1990 the BIA had recognized a colonial government and returned

10   the Colony's assets, (*id.* ¶ 3).  That government consisted of Chairman Glenn Wasson and

11   Council Members Elverine Castro, Lucy Lowery, Thomas Wasson, and a fifth council member,

12   whose position was held by four different persons between 1990 and 2000, including William

13   Bills. (*See id.* ¶ 4).

14           At a February 2000 council meeting, Chairman Glenn Wasson reported to the Council

15   that Vice Chairman William Bills might not qualify as an Indian because of his adoption, and

16   that he was interfering with colonial mail. (*See id.* ¶ 5).  On February 22, 2000, Chairman

17   Wasson was stabbed to death on the steps of the Colonial Administration Building, and the

18   United States has not yet arrested anyone for the murder. (*Id.* ¶ 6).  His son Thomas R. Wasson

19   ("Wasson") and Bills both claimed the chairmanship: Bills because he was the Vice Chairman,

20   and Wasson because he alleged (and reported to the WNA) that Bills was ineligible for

21   membership under colonial law. (*See id.* ¶ 7).  The WNA declared the Colony to be

22   dysfunctional and refused to recognize any colonial government in July 2000. (*Id.* ¶ 8).  In

23   December 2000, the Western Regional Office ("WRO")—which manages Nevada, Arizona, and

24   Utah—overruled the WNA, but the BIA has still not recognized any colonial government. (*See*

25   *id.* ¶¶ 9–10).

On August 16, 2002 a panel of judges convened and ruled that Wasson was the Chairman of the Colonial Council. (*Id.* ¶ 11).  The Inter-Tribal Court of Appeals dismissed all appeals on May 17, 2007. (*Id.* ¶ 12).  In a federal interpleader action filed by Bank of America in this District to determine which faction (the Wasson faction or the Bills faction) had the right to use a colonial bank account, *see Bank of America v. Bills*, No. 3:00-cv-450, the Hon. Brian E. Sandoval ruled that the parties had exhausted their tribal remedies, that a federal court must enforce tribal court orders under ordinary principles of comity, and that the order of a special panel of tribal judges (the "Minnesota Panel") to which the parties had stipulated controlled. (*See* Sandoval Summ. J. Order 8–9, Mar. 6, 2008, ECF No. 7-1).[1]  That case was reassigned to this Court, and the Ninth Circuit affirmed in an unpublished opinion captioned as *Bank of America v. Swanson*. (*See* Mem. Op., Oct. 14, 2010, ECF No. 7-3).  The Supreme Court denied certiorari on April 18, 2011. (*See* Notice, Apr. 18, 2011, ECF No. 253 in Case No. 3:00-cv-450).

## B.    BIA Encroachment

In May 2011, Wasson and his agents began rehabilitating a smoke shop within the Colony that was abandoned when Glenn Wasson was murdered. (*See* Compl. ¶ 15).  On July 31, 2011, BIA police officers told several of Wasson's contractors that they would have to leave the land by the next morning or face arrest. (*Id.* ¶¶ 16–17).  The officers also failed to eject other persons from the Colony who did not have the right to be there. (*Id.* ¶ 18).  The Superintendent

---

[1]The procedural history is actually more complex than reported by Plaintiffs and is fully recounted in Judge Sandoval's order. (*See* Sandoval Summ. J. Order 2–3).  Bills first filed for emergency injunctive relief in the Winnemucca Tribal Court, and that court granted him relief, declaring him to be the Acting Chairman.  The Inter-Tribal Court of Appeals of Nevada ordered a trial on the matter, and the pro tem judge appointed to try the case ruled that there was no legitimately formed colonial government and that an election must be held.  The parties agreed to submit their cross-appeals to a special panel of judges from the Sioux Nation (the Minnesota Panel) for a binding, non-appealable decision.  The Minnesota Panel ruled in favor of Wasson, and this appears to be the August 16, 2002 decision to which Plaintiffs refer.  The May 17, 2007 decision by the Inter-Tribal Court of Appeals (of Nevada) represents that court's ruling that it had no jurisdiction to consider an appeal from the Minnesota Panel.

1    of the WNA has not responded to Wasson's request to permit his agents to return. (*Id.* ¶ 20).

2        **C.    The Present Lawsuit**

3        Wasson and the Colony, i.e., the Colony as purportedly represented by Wasson, have

4    sued the United States of America *ex rel.* DOI, the BIA, and the unnamed Superintendent of the

5    WNA in this Court on two causes of action: (1) injunctive relief preventing the BIA from

6    interfering with contractors Wasson has directed to perform work within the Colony; and (2)

7    declaratory relief as to the identity of legitimate colonial officials. The claim for declaratory

8    relief, however, asks the Court not only to declare a fact but to issue a command. (*See* Compl. ¶

9    44) ("Plaintiffs request that this Court declare that the United States *must recognize* the

10   government of the Winnemucca Indian Colony as Thomas Wasson, Chairman, Judy Rojo,

11   Katehrine Halsbruck, Misty Morning Dawn Rojo and Eric Magiera as the official and serving

12   Council of the Winnemucca Indian Colony . . . ." (emphasis added)).

13       Plaintiffs moved for a TRO and preliminary injunction granting interim relief as to the

14   first cause of action. The Court issued a TRO, ordering the BIA to recognize a person or persons

15   in the interim as the legitimate representative(s) of the Colony. The BIA gave interim

16   recognition to Wasson and Bills, the only surviving members of the last Council the BIA

17   recognized and the only surviving members of the Council the Minnesota Panel affirmed. The

18   Court then granted a preliminary injunction preventing the BIA from interfering with Wasson's

19   and his agents' activities on colonial land, e.g., the rehabilitation of a derelict building into a

20   smoke shop. The Court noted that unless Bills appeared and was heard to object, Wasson

21   represented the only remaining legitimate member of the Council under tribal rulings, and that

22   any other person wishing to establish recognition as a member of the Council would have to

23   obtain a tribal judgment to that effect.

24       Linda Ayer has moved to intervene. Plaintiffs have moved to strike Ayer's objection to

25   their motions for preliminary injunctive relief, have submitted a proposed preliminary injunction

1   order, and have moved to amend the Complaint.  Defendants have moved to dismiss.

2   **II.    LEGAL STANDARDS**

3        **A.    Intervention**

4        (a) Intervention of Right. On timely motion, the court must permit anyone to
         intervene who:

5             (1) is given an unconditional right to intervene by a federal statute; or

6
             (2) claims an interest relating to the property or transaction that is the subject
7            of the action, and is so situated that disposing of the action may as a practical
             matter impair or impede the movant's ability to protect its interest, unless
8            existing parties adequately represent that interest.

9        (b) Permissive Intervention.

10            (1) In General. On timely motion, the court may permit anyone to intervene
              who:
11
                   (A) is given a conditional right to intervene by a federal statute; or
12
                   (B) has a claim or defense that shares with the main action a common
13                 question of law or fact.

14  Fed. R. Civ. P. 24.

15       **B.    Dismissal**

16       Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the

17  claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of

18  what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47

19  (1957).  Federal Rule of Civil Procedure 12(b)(6) mandates that a court dismiss a cause of action

20  that fails to state a claim upon which relief can be granted.  A motion to dismiss under Rule

21  12(b)(6) tests the complaint's sufficiency. *See N. Star Int'l v. Ariz. Corp. Comm'n*, 720

22  F.2d 578, 581 (9th Cir. 1983).  When considering a motion to dismiss under Rule 12(b)(6) for

23  failure to state a claim, dismissal is appropriate only when the complaint does not give the

24  defendant fair notice of a legally cognizable claim and the grounds on which it rests. *See Bell*

25  *Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  In considering whether the complaint is

1   sufficient to state a claim, the court will take all material allegations as true and construe them in

2   the light most favorable to the plaintiff. *See NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th

3   Cir. 1986).  The court, however, is not required to accept as true allegations that are merely

4   conclusory, unwarranted deductions of fact, or unreasonable inferences. *See Sprewell v. Golden*

5   *State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  A formulaic recitation of a cause of action

6   with conclusory allegations is not sufficient; a plaintiff must plead facts showing that a violation

7   is plausible, not just possible. *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009)

8   (citing *Twombly*, 550 U.S. at 555).

9        "Generally, a district court may not consider any material beyond the pleadings in ruling

10  on a Rule 12(b)(6) motion.  However, material which is properly submitted as part of the

11  complaint may be considered on a motion to dismiss." *Hal Roach Studios, Inc. v. Richard Feiner*

12  *& Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citation omitted).  Similarly, "documents

13  whose contents are alleged in a complaint and whose authenticity no party questions, but which

14  are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6)

15  motion to dismiss" without converting the motion to dismiss into a motion for summary

16  judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994).  Moreover, under Federal Rule

17  of Evidence 201, a court may take judicial notice of "matters of public record." *Mack v. S. Bay*

18  *Beer Distribs., Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986).  Otherwise, if the district court

19  considers materials outside of the pleadings, the motion to dismiss is converted into a motion for

20  summary judgment. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th

21  Cir. 2001).

22  **III.    ANALYSIS**

23       **A.    Intervention**

24       Linda Ayer, Jim Ayer, Allen Ambler, Laura Ambler, and Cheryl Apperson-Hill

25  (collectively, the "Ayer Faction") have moved to intervene as defendants.  The Ayer Faction

1   alleges it has been involved in litigation and administrative actions against the Wasson Faction

2   for years, including a pending trespassing action by the Wasson Faction against the Ayer

3   Faction.  Those actions are based upon the Ayer Faction's assertion that it constitutes the

4   legitimate Council.  The Court will permit the Ayer Faction to intervene.  It is theoretically

5   possible that they can produce a tribal judgment post-dating the Minnesota Panel's order that

6   entitles them to recognition.  Their evidence at this point is insufficient to sustain their objections

7   to the preliminary injunction, but the Court will not strike those objections.

8          The Ayer Faction alleges that the Wasson Faction has ordered them to leave their private

9   homes and businesses on the Colony.  The Court will enjoin any such action, at least until there

10  is a final judgment in the case.  Regardless of whether tribal law would otherwise permit it—and

11  this seems doubtful—the Wasson Faction will not be permitted to strip fellow Colony members

12  of their private property and banish them based on a preliminary ruling and interim recognition.

13  It is possible, of course, that the Wasson Faction has simply asked the Ayer Faction to quit the

14  South Street Smoke Shop, *see infra*, and that the Ayer Faction is characterizing this demand as

15  an order to leave their private homes and businesses.  Such a demand would probably be within

16  the realm of the authority of the Council, assuming the South Street Smoke Shop constitutes

17  sovereign Colony property.

18         Plaintiffs oppose the motion to intervene.  Although Plaintiffs are likely to succeed on the

19  merits based on the facts to which the Court currently has access—the Ayer Faction appears to

20  have some colorable claim to Colony leadership,[2] though it affirmatively alleges in its reply that

21

22         [2]In its reply, the Ayer Faction adduces a copy of a "judgment" of the purported
    Winnemucca Tribal Court ("WTC") dated July 12, 2010. (*See* Decision & Order, July 12, 2010,
23  ECF No. 31-1).  That decision is signed by an "election judge" whose name is not typed and
    whose signature is only semi-legible and appears to read "K. Doyle." (*See id.* 4).  This document
24  is enough to give the Ayer Faction a colorable claim to tribal leadership.  The judgment is
    suspect, however, because the election judge appears to have presumed that the Council
25  consisted of the Ayer Faction without directly addressing that antecedent question, so the
    Minnesota Panel's decision would seem to survive this purported judgment.  In other words, it

the disputes arising since the Minnesota Panel's decision have not been addressed by the tribal courts—it cannot be said that the Ayer Faction does not "claim[] an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede [its] ability to protect its interest, unless existing parties adequately represent that interest."  The Court grants the motion to intervene.

## B.    Proposed Preliminary Injunction Order

In their proposed preliminary injunction order, Plaintiffs include several incorrect statements of law and misrepresent the Court's oral rulings.  The Court rejects the proposed order and will solicit a new, proper order with the following errors corrected.

First, the proposed order includes an improper finding on page two that the Court may under the Administrative Procedures Act ("APA") order the BIA to recognize "a certain tribal government" under *Goodface v. Grassrope*, 708 F.2d 335 (8th Cir. 1983).  The *Goodface* court did not so rule, and neither did this Court.  This Court ruled, as did the *Goodface* court, that the BIA could abuse its discretion under the APA by failing to take sides and give interim recognition to some purported tribal leadership when the leadership was in dispute between two or more factions, until the tribal courts could sort the dispute out internally.  Although it is not inconceivable that a district court could find the BIA's particular choice of interim recognition to be an abuse of discretion in an appropriate case, the choice of which tribal leadership to recognize lies with the BIA in the first instance, and in this case the BIA's choice to give interim recognition to Wasson and Bills was not an abuse of discretion.[3]

appears the "court" that issued this "judgment" was created by the Ayer Faction itself after the BIA failed to convene a CFR court for several years, which would render the "judgment" meaningless and self-serving. (*See id.* 1).  But these are issues of fact for trial.  The Ayer Faction will be permitted to intervene.

[3]So far, only Wasson has appeared.  If Bills appears and it becomes clear that the two cannot work together, the BIA will have to take sides to avoid abusing its discretion under *Goodface*.

1    Second, the proposed order includes an improper finding on page four that "William Bills

2   is rejected as a 'legitimate representative(s) of the Winnemucca Indian Colony of Nevada' as he

3   does not appear to qualify as tribal member based upon the requirements contained in Article II,

4   Section 1 of the Constitution and By-Laws of the Colony . . . ."  This proposed finding is wrong

5   on several levels.  Not only did the Court make no such ruling, it did not even hear argument on

6   the point, much less indicate that it would rule on such a question.  And the Court likely has no

7   jurisdiction to make such a determination, in any case, at least not where there is a functional

8   tribal court.

9    Third, the proposed order contains an improper declaration on page four that "[t]he BIA

10   shall . . . be deemed to have given interim recognition to Thomas Wasson, with his Council,

11   without any restrictions, as the legitimate representative(s) of the Winnemucca Indian Colony of

12   Nevada . . . ."  This declaration is simultaneously too broad and too narrow, and moreover, it is

13   unnecessary.  The BIA has given interim recognition to Wasson and Bills, and its decision is not

14   an abuse of discretion in light of the controlling tribal rulings, i.e., the Minnesota Panel's ruling.

15   No further pronouncement by the Court is necessary, certainly not so open-ended and vague a

16   pronouncement as the one drafted by Plaintiffs.  The reference to "his Council" is likely an

17   attempt to shoehorn in recognition of the alleged four other members of the Wasson Faction.

18   But those purported Council members, like Bills's and/or Ayer's purported Council members,

19   must obtain a tribal judgment if they wish to convince the BIA or the Court that their Council

20   membership supersedes the membership as determined by the Minnesota Panel.

21    Fourth, as the BIA notes in its objection, and as is apparent from the Ayer Faction's

22   motion to intervene, there are currently two smoke shops within the Colony.  There is an

23   operational smoke shop currently operated by the Ayer Faction, located on the 20-acre parcel of

24   land at 322 South St. in Winnemucca (the "South Street Smoke Shop").  There is also a

25   nonoperational smoke shop currently being rehabilitated by the Wasson Faction, located on the

320-acre parcel of land at 1985 Hanson St. (the "Hanson Street Smoke Shop").  The BIA is concerned that the declaration on page four of the proposed order is too broad and could lead to a violent confrontation between the Wasson and Ayer Factions.  The disputed language reads, "The BIA . . . are hereby enjoined interfering [sic] with the peaceful enjoyment and possession by the Plaintiffs on the lands consisting of 320 acres located at 1985 Hanson St. and 20 acres located at 322 South St. . . . ."  The BIA fears this language could be read to permit Wasson to eject Ayer and her cohorts from the South Street Smoke Shop.  The point of the present lawsuit of course is to force BIA recognition of the rightful Colony leadership, as determined by the tribal courts.  That leadership will presumably have the ability to determine who may operate both smoke shops according to colonial law, and it will presumably have the power to eject trespassers.  The Court has ordered the BIA to give interim recognition to some person(s), and it has chosen Wasson and Bills, within its discretion.  Ayer has moved to intervene, but, as discussed, *supra*, her objections are not substantial enough to prevent a preliminary injunction. If the BIA believes a lawful decree of this Court will lead to a confrontation, then it must, as a part of its trust duties to the Colony, take all measures necessary to prevent dissatisfied parties from unlawfully retaliating against prevailing parties.  It will not do for the BIA to ask the Court to suspend the administration of justice simply because acrimony between the parties may require its aggressive enforcement of the law and maintenance of order.  Still, whether the South Street Smoke Shop constitutes sovereign versus private property is a matter for the tribal courts, and until there is a functional tribal court that can referee the matter, this Court will not permit either side to upset the status quo in a way that risks violence.  The new proposed preliminary injunction order will therefore ensure the Wasson faction's free access to the Hanson Street Smoke Shop and other parcels of colonial land but must make clear that Wasson and his agents may not attempt to evict other parties from the South Street Smoke Shop at this time.

///

### C.    William Bills's Whereabouts

The BIA has filed a "Notice of William Bills' Contact with the Bureau of Indian Affairs." But the contents of that document do not deliver what the title promises. The notice contains only proof of Bills's purported attorney's contact with the BIA. The purported contact between Bills and his attorney is hearsay, and Bills's purported statements to his attorney are double hearsay. Mr. Bryan Bowker, the WRO Director, attests that his office received a letter from Mr. Wes Williams, Jr. on September 19, 2011. (*See* Bowker Decl., Sept. 20, 2011, ECF No. 23, at 4). First, the attached letter from Williams contains no oath such as in a declaration or affidavit, and therefore Williams's statements therein about Bills and his intentions are garden-variety hearsay insofar as Bowker presents them via his own declaration. There is therefore no proper evidence before the Court concerning Bills's whereabouts or intentions. Second, insofar as Bowker purports to relay Bills's own statements via his declaration, it is double hearsay. Williams's letter to Bowker relays that Bills supports the Ayer Faction, that he objects to the BIA's reliance on Wasson's purported leadership, and that he wishes to work with all parties involved to resolve the matter. Fair enough, but if so, Bills must direct Williams (or whoever his attorney is) to file a motion to intervene, as Ayer has done.[4] The Court currently has only unauthenticated hearsay as to Bills's intentions.

### D.    Motion to Dismiss

The motion to dismiss mostly repeats jurisdictional arguments the Court has already rejected. For example, Defendants argue that the Court has no jurisdiction to order the BIA to recognize any particular colonial government. The Court addressed that issue in a previous order and ruled that it had jurisdiction under the APA to order the BIA to recognize *some* government in the interim until the BIA determined which government deserved final

---

[4]Williams is Ayer's counsel of record in this case.

1    recognition.  The Court also noted that it could potentially find an abuse of discretion in the

2    BIA's choice of either temporary or final recognition if not in accordance with authoritative

3    tribal rulings.  Such a determination in this Court requires only that the Court identify, and hold

4    the BIA to respect, tribal rulings on internal matters.  Such a determination does not require the

5    Court to address the merits of internal colonial politics directly, which neither the Court nor the

6    BIA may do.

7            Defendants also argue that Plaintiffs have sought only declaratory and injunctive relief,

8    and that these are not cognizable causes of action, but remedies.  It is true that claims for

9    declaratory and injunctive relief are often redundant with other substantive claims.  For example,

10   a claim for a declaration of breach is redundant with a breach of contract claim.  But a

11   declaratory judgment is a cognizable claim in its own right, *see* 28 U.S.C. § 2201, and a Court

12   may provide "further relief, including an injunction" based upon such a declaration, *Powell v.*

13   *McCormack*, 395 U.S. 486, 499 (1969) (citing 28 U.S.C. § 2202).  Where claims for declaratory

14   and injunctive relief accompany other substantive claims without invoking any substantive

15   issues not addressed by the independent claims, courts often dismiss the claims for declaratory

16   and injunctive relief as constituting not independent claims but part of the prayer for relief.  But

17   where, as here, such claims stand on their own substantive ground, they are neither redundant

18   nor insufficient.  Although a request for a declaration may in some cases be redundant with

19   another substantive claim, and a request for a declaration may in some circumstances amount to

20   a request for an impermissible advisory opinion where there is no ripe "case or controversy"

21   under Article III, neither of these appear to be the case here, and it is clear that the Declaratory

22   Judgment Act creates a civil cause of action for a declaration of rights, so long as the request for

23   a declaration invokes federal subject matter jurisdiction conferred elsewhere. *See Fid. & Cas.*

24   *Co. v. Reserve Ins. Co.*, 596 F.2d 914, 916 (9th Cir. 1979) (citing *Skelly Oil v. Phillips*

25   *Petroleum*, 339 U.S. 667 (1950)).  Plaintiffs base subject matter jurisdiction here on the APA via

1  § 1331.

2      Defendants also argue that sovereign immunity protects them from suit and that the APA

3  is no waiver of this immunity here.  But the Court has already ruled that the APA governs this

4  tribal-recognition action and that review under § 706 of the APA is properly invoked here.  *See*

5  *Goodface*, 708 F.2d at 338 (affirming the district court's assertion of subject matter jurisdiction

6  over a tribal recognition action under 28 U.S.C. § 1331 and 5 U.S.C. § 706(2)(A)).  The fact that

7  Plaintiffs have cited to other sections of the Code that do not properly apply in the present case

8  does not destroy jurisdiction under the APA.  Plaintiffs have properly invoked § 1331.

9      Nor does the fact of ongoing administrative adjudication of tribal recognition prevent the

10  Court's jurisdiction to require interim recognition.  The Court has not required the BIA to

11  recognize any particular colonial leadership, but has only required the BIA to recognize some

12  interim leadership while the Colony sorts out the dispute internally.  The Court has ruled that the

13  BIA's determination was not an abuse of discretion, because it appeared to be in accordance with

14  authoritative tribal rulings.  The same standard under the APA will apply to the BIA's final

15  determination of recognition.

16      Defendants also argue that Bills, one of the two members of the current Council under

17  interim recognition, did not authorize the Complaint.  But the BIA's perception of Bills's

18  objection is based upon inadmissible hearsay evidence, as discussed, *supra*.  And if Bills is

19  properly heard to object in this case in the future, the BIA will simply have to take sides between

20  Wasson and Bills in the interim to avoid abusing its discretion under the APA. *See Goodface*,

21  708 F.2d at 338–39 ("Such a recognition of both councils amounts to a recognition of neither.

22  Thus, the district court correctly found that the BIA acted arbitrarily and capriciously by

23  effectively creating a hiatus in tribal government which jeopardized the continuation of

24  necessary day-to-day services on the reservation.").  Likewise here, if Bills is properly heard to

25  object, and if Wasson and Bills are in deadlocked opposition to one another, the BIA's interim

1    recognition of both of them as the sole legitimate members of the Council would in substance

2    amount to a recognition of no council at all and constitute an abuse of discretion under the APA.

3    In light of the Minnesota Panel's rulings, the BIA could probably grant either Wasson or Bills

4    interim recognition without abusing its discretion.  After all, Bills was determined to have been

5    the Vice Chairman when the Chairman was murdered, and Wasson may have a colorable claim

6    that Bills is ineligible for Colony membership.  The BIA could therefore likely choose to side

7    with either of them in the interim without abusing its discretion.  At the present time, however,

8    Bills has not appeared in this matter and his intentions are indicated only through inadmissable

9    double hearsay.

10       Defendants also argue that Plaintiffs' claims are precluded by *Magiera v. Norton*, No.

11   3:01-cv-00467.  In that case, litigated ten years ago before the Hon. Larry R. Hicks, Wasson and

12   others sued the Secretary of the Interior and Bills for breaches of the federal–Indian trust

13   doctrine and violations of the APA, the Indian Civil Rights Act, and 42 U.S.C. § 1985. (*See*

14   *Magiera* Order, Nov. 7, 2002, ECF No. 36-10).  Judge Hicks granted the defendants' motion to

15   dismiss for failure to exhaust administrative remedies or properly to invoke the court's

16   jurisdiction. (*See id.* 5).  Judge Hicks ruled that there had been no final agency action, and hence

17   there was no jurisdiction under the APA's waiver of sovereign immunity.

18       There are at least three problems with Defendants' invocation of the *Magiera* Order.

19   First, Defendants' invocation of a decade-old and still-ongoing adjudication to establish a failure

20   to exhaust only serves to show that the administrative remedy here is at best inefficacious and at

21   worst futile.  Perhaps the administrative process appeared adequate in 2001, but it does not

22   appear so today.  "Exhaustion of administrative remedies is not required where administrative

23   remedies are inadequate or not efficacious, where pursuit of administrative remedies would be a

24   futile gesture, where irreparable injury will result unless immediate judicial review is permitted,

25   or where the administrative proceeding would be void." *SE Alaska Conservation Council, Inc. v.*

*Watson*, 697 F.2d 1305, 1309 (9th Cir. 1983).  Here, the first exception clearly applies, and the second and third exceptions likely apply, as well.  Second, Judge Hicks dismissed the *Magiera* case without prejudice, so the exhaustion issue is simply not precluded insofar as Plaintiffs allege futility or other exceptions arising in the meantime. (*See Magiera* Order 16 ("The Plaintiffs' claims are dismissed without prejudice to reinstatement following exhaustion . . . .")).  And even if the *Magiera* Order had been with prejudice as to administrative exhaustion, the additional decade of administrative delay would almost certainly entitle Plaintiffs to relief from the preclusive effect of that order under Rule 60(b)(6).  Third, Judge Hicks did not address whether the court had jurisdiction to order interim recognition of *some* governing body, as under *Goodface*, but only ruled that the court did not have jurisdiction to select that body directly.  The availability of a *Goodface* remedy does not appear to have been litigated.  A decade of delay is enough.  This sovereign Indian entity faces irreparable political dissolution if the matter is not promptly adjudicated.  The Court cannot determine the tribal leadership directly—except perhaps as a last resort when the alternative would be irreparable political dissolution—but it can require the BIA to make a prompt determination within its discretion in light of authoritative tribal rulings.

Finally, Defendants argue that the Complaint should be dismissed under Rule 12(b)(5) because Plaintiffs have not properly served the United States with process under Rule 4(i).

To serve the United States, a party must:

(A)(i) deliver a copy of the summons and of the complaint to the United States attorney for the district where the action is brought--or to an assistant United States attorney or clerical employee whom the United States attorney designates in a writing filed with the court clerk--or

(ii) send a copy of each by registered or certified mail to the civil-process clerk at the United States attorney's office; [and]

(B) send a copy of each by registered or certified mail to the Attorney General of the United States at Washington, D.C.

1    Fed. R. Civ. P. 4(i)(1)(A)–(B).  Defendants argue that Plaintiffs did not deliver the Summons and

2    Complaint to the agency or the Attorney General.  It appears that Plaintiffs served the U.S.

3    Attorney's Office in Reno, Nevada and the WNA of the BIA in Carson City, Nevada.

4    (*See* Proofs of Service, Aug. 30, 2011, ECF Nos. 5, 6).  Plaintiffs have also filed a certificate of

5    service indicating that one of its employees mailed copies of the Summons and Complaint to the

6    BIA c/o the Attorney General in Washington, D.C. via certified mail (No. 7155 5474 4100 7934

7    0961) and also to the BIA c/o the U.S. Attorney's Office in Las Vegas, Nevada via certified mail

8    (No. 7155 5474 4100 7934 0978). (*See* Certificate of Service, Sept. 1, 2011, ECF No. 11).

9    Plaintiffs have filed a copy of proof of receipt of certified mail by the Department of the Interior

10   c/o U.S. Attorney's Office in Las Vegas, Nevada, although this is for a different article number

11   than the Summons and Complaint. (*See* Receipt, Sept. 1, 2011, ECF No. 13).  There is no proof

12   of receipt by the Attorney General in Washington, D.C.  The Court is satisfied with the certified

13   mail slips, because Rule 4(i)(B) only requires "send[ing]" the documents, and Plaintiffs have

14   satisfied the Court that they complied.

15          **E.     Motion to Amend**

16          Plaintiffs have filed a motion to amend the Complaint.  The proposed amended complaint

17   lists two causes of action.  The first nominal cause of action is in fact simply a continuation of

18   the statement of facts, with some additional argument.  The second nominal cause of action is for

19   declaratory relief.  The Court grants the motion to amend.

20                                        **CONCLUSION**

21          At the hearing on the present motions, the Court addressed the parties concerning the

22   necessity for Wasson, Bills, and the other Indian parties to resolve this dispute amicably, if not

23   by direct agreement, then through submission of the following issues to a mutually agreeable

24   tribal forum such as the Inter-Tribal Court of Appeals of Nevada: (1) final determination of tribal

25   membership rolls; (2) supervision of a neutrally administered general election; and (3) a

declaration of the resulting tribal leadership.  If Wasson and Bills cannot agree even to submit their disputes to a neutral tribal tribunal, this Court, left with a choice between direct intervention and the irreparable political dissolution of the Colony, will intervene directly in these matters. Still, the Court can only do so much.  Ultimately, the parties must learn to tolerate one another, or the only choice left to the BIA may be to terminate recognition of the Colony altogether, a decision that would be totally unreviewable by this Court as a political question. *See, e.g.*, *Kahawaiolaa v. Norton*, 386 F.3d 1271, 1275–76 (9th Cir. 2004).

IT IS HEREBY ORDERED that the Motion to Intervene (ECF No. 18) is GRANTED.

IT IS FURTHER ORDERED that the Proposed Order (ECF No. 24) is REJECTED. Plaintiffs shall submit a new proposed preliminary injunction order consistent with this order, past orders, and the Court's comments at oral argument.

IT IS FURTHER ORDERED that the Motion to Strike (ECF No. 28) is DENIED.

IT IS FURTHER ORDERED that the Motion to Dismiss (ECF No. 36) is DENIED.

IT IS FURTHER ORDERED that the Motion to Amend (ECF No. 44) is GRANTED. Plaintiffs shall ensure proper service of the Amended Complaint on all Defendants within twenty-eight (28) days of the entry of this order into the docket.

IT IS SO ORDERED.

Dated this 10th day of January, 2012.

_____
ROBERT C. JONES
United States District Judge