1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

WINNEMUCCA INDIAN COLONY et al.,    )
    )
            Plaintiffs,    )
    )
         vs.    )    3:11-cv-00622-RCJ-VPC
    )
UNITED STATES OF AMERICA ex rel.    )    **ORDER AND**
DEPARTMENT OF THE INTERIOR et al.,    )    **INJUNCTION**
    )
         Defendants.    )
———————————————————— )

       This case arises out of the refusal of the U.S. Department of the Interior ("DOI") to recognize a tribal government of the Winnemucca Indian Colony (the "Colony") and the interference of the Bureau of Indian Affairs ("BIA") with the activities of a purported Council member on colonial land.  The Court issued a temporary restraining order ("TRO") ordering the BIA to grant interim recognition to some person or persons but not ordering or restraining any BIA activity on the land.  The Court then granted a preliminary injunction in part, "enjoin[ing] the BIA from interfering with activities on colonial land by Wasson and his agents" and noting that "[u]ntil some tribal court says otherwise or Bills appears and is heard to object (making the Council's vote 1–1), Wasson represents the will of the Council under the [Indian court's] ruling."  The Court did not order the BIA to recognize anyone other than Wasson and (if he appeared) Bills as Council members.  The Court signed Plaintiffs' revised proposed preliminary injunction order, as further amended by the Court (the "Order").  The Court also permitted

1    Plaintiffs to amend the Complaint, denied Defendants' motion to dismiss, and permitted Linda

2    Ayer to intervene.  Pending before the Court are Defendants' motion for the Court to reconsider

3    the Order, William Bills's motion to intervene, and Defendants' motion to dismiss.  For the

4    reasons given herein, the Court grants the motion to reconsider in part, grants the motion to

5    intervene, and denies the motion to dismiss.

6    **I.    FACTS AND PROCEDURAL HISTORY**

7        **A.    Tribal Recognition**

8            In 1972, the Colony adopted a constitution pursuant to the Indian Reorganization Act.

9    (Compl. ¶ 1, Aug. 29, 2011, ECF No. 1).  In 1986, the Western Nevada Agency of the BIA

10   ("WNA") took control of the Colony's assets and withdrew its recognition of the Colonial

11   government, (*id.* ¶ 2), but by 1990 the BIA had recognized a colonial government and returned

12   the Colony's assets, (*id.* ¶ 3).  That government consisted of Chairman Glenn Wasson and

13   Council Members Elverine Castro, Lucy Lowery, Thomas Wasson, and a fifth council member,

14   whose position was held by four different persons between 1990 and 2000, including William

15   Bills. (*See id.* ¶ 4).

16           At a February 2000 council meeting, Chairman Glenn Wasson reported to the Council

17   that Vice Chairman and Council Member William Bills might not qualify as an Indian because

18   of his adoption, and that he was interfering with colonial mail. (*See id.* ¶ 5).  On February 22,

19   2000, Chairman Glenn Wasson was stabbed to death on the steps of the Colonial Administration

20   Building, and the United States has not yet arrested anyone for the murder. (*Id.* ¶ 6).  Thomas R.

21   Wasson ("Wasson") and Bills both claimed the chairmanship: Bills because he was the Vice

22   Chairman, and Wasson because he alleged (and reported to the WNA) that Bills was not an

23   Indian under colonial rules. (*See id.* ¶ 7).  The WNA declared the Colony to be dysfunctional and

24   refused to recognize any colonial government in July 2000. (*Id.* ¶ 8).  In December 2000, the

25   Western Regional Office ("WRO")—which manages Nevada, Arizona, and Utah—overruled the

1   WNA, but the BIA has still not recognized any colonial government. (*See id.* ¶¶ 9–10).

2   On August 16, 2002 a panel of judges convened and ruled that Wasson was the Chairman

3   of the Colonial Council. (*Id.* ¶ 11). The Inter-Tribal Court of Appeals dismissed all appeals on

4   May 17, 2007. (*Id.* ¶ 12). In a federal interpleader action filed by Bank of America in this

5   District to determine which faction (the Wasson faction or the Bills faction) had the right to use a

6   colonial bank account, *see Bank of America v. Bills*, No. 3:00-cv-450, Judge Brian E. Sandoval

7   ruled that the parties had exhausted their tribal remedies, that a federal court must enforce tribal

8   court orders under ordinary principles of comity, and that the order of a special panel of tribal

9   judges (the "Minnesota Panel") to which the parties had stipulated controlled. (*See* Sandoval

10  Summ. J. Order 8–9, Mar. 6, 2008, ECF No. 7-1).[1] The Ninth Circuit affirmed in an unpublished

11  opinion captioned as *Bank of America v. Swanson*. (*See* Mem. Op., Oct. 14, 2010, ECF No. 7-3).

12  The Supreme Court denied certiorari on April 18, 2011. (*See* Notice, Apr. 18, 2011, ECF No.

13  253 in Case No. 3:00-cv-450).

14  **B.   BIA Encroachment**

15  In May 2011, members of the Colony began rehabilitating a smoke shop on colonial land

16  that was abandoned when Glenn Wasson was murdered. (Compl. ¶ 15). On July 31, 2011, BIA

17  police officers told several contractors hired by Wasson to help repair the smoke shop that they

18  would have to leave the land by the next morning or they would be arrested. (*Id.* ¶¶ 16–17). The

19

---

20  [1]The procedural history is actually more complex than reported by Plaintiffs and is fully
21  recounted in Judge Sandoval's order. (*See* Sandoval Summ. J. Order 2–3). Bills first filed for
    emergency injunctive relief in the Winnemucca Tribal Court, and that court granted him relief,
22  declaring him to be the Acting Chairman. The Inter-Tribal Court of Appeals of Nevada ordered
    a trial on the matter, and the pro tem judge appointed to try the case ruled that there was no
23  legitimately formed colonial government and that an election must be held. The parties agreed
    to submit their cross-appeals to a special panel of judges from the Sioux Nation (the "Minnesota
24  Panel") for a binding, non-appealable decision. The Minnesota Panel ruled in favor of Wasson,
    and this appears to be the August 16, 2002 decision to which Plaintiffs refer. The May 17, 2007
25  decision by the Inter-Tribal Court of Appeals (of Nevada) represents that court's ruling that it
    had no jurisdiction to consider an appeal from the Minnesota Panel.

officers also failed to eject other persons from the Colony who did not have the right to be there. (*Id.* ¶ 18). The Superintendent of the WNA has not responded to Wasson's request to permit Colony members to return to the Colony lands. (*Id.* ¶ 20).

### C.    The Present Lawsuit

Plaintiffs the Colony and Wasson sued the United States of America *ex rel.* DOI, BIA, and the unnamed Superintendent of the WNA in this Court on two causes of action: (1) injunctive relief preventing the BIA from interfering with contractors Wasson has directed to perform work within the Colony; and (2) declaratory relief as to the identity of legitimate Colonial officials. The claim for declaratory relief, however, asks the Court not only to declare a fact but to issue a command. (*See* Compl. ¶ 44) ("Plaintiffs request that this Court declare that the United States *must recognize* the government of the Winnemucca Indian Colony as Thomas Wasson, Chairman, Judy Rojo, Katehrine Halsbruck, Misty Morning Dawn Rojo and Eric Magiera as the official and serving Council of the Winnemucca Indian Colony . . . ." (emphasis added)). Plaintiffs moved for a TRO and preliminary injunction granting interim relief as to the first cause of action.

The Court issued a TRO ordering the BIA to recognize a person or persons in the interim as the legitimate representative(s) of the Colony. The BIA gave interim recognition to Wasson and Bills, the only surviving members of the last Council the BIA recognized and the only surviving members of the Council the Minnesota Panel affirmed. The Court then granted a preliminary injunction preventing the BIA from interfering with Wasson's and his agents' activities on colonial land, e.g., the renovation of a derelict building into a smoke shop. The Court noted that unless Bills appeared and was heard to object, Wasson represented the only remaining legitimate member of the Council under the Indian courts' rulings, and that any other person wishing to establish recognition as a member of the Council would have to obtain a tribal judgment to that effect. The Court signed Plaintiffs' revised proposed preliminary injunction

1   order, as further amended by the Court.  The Court also permitted Plaintiffs to amend the

2   Complaint, denied Defendants' motion to dismiss, and permitted Linda Ayer to intervene.

3   Defendants have asked the Court to reconsider the Order and have moved again to dismiss.

4   Also, Bills has now properly appeared and has moved to intervene.

5   **II.     LEGAL STANDARDS**

6      **A.      Reconsideration**

7         "A motion to alter or amend a judgment must be filed no later than 28 days after the entry

8   of the judgment." Fed. R. Civ. P. 59(e).  Defendants filed the present motion for reconsideration

9   three days after the Court entered the Order.  The motion is therefore timely under Rule 59(e).

10     **B.      Intervention**

11        (a) Intervention of Right. On timely motion, the court must permit anyone to
         intervene who:

12

13             (1) is given an unconditional right to intervene by a federal statute; or

14             (2) claims an interest relating to the property or transaction that is the subject
               of the action, and is so situated that disposing of the action may as a practical
               matter impair or impede the movant's ability to protect its interest, unless
15             existing parties adequately represent that interest.

16        (b) Permissive Intervention.

17             (1) In General. On timely motion, the court may permit anyone to intervene
               who:

18

19                 (A) is given a conditional right to intervene by a federal statute; or

20                 (B) has a claim or defense that shares with the main action a common
                   question of law or fact.

21   Fed. R. Civ. P. 24.

22     **C.      Dismissal**

23        Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the

24   claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of

25   what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47

(1957).  Federal Rule of Civil Procedure 12(b)(6) mandates that a court dismiss a cause of action that fails to state a claim upon which relief can be granted.  A motion to dismiss under Rule 12(b)(6) tests the complaint's sufficiency. *See N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).  When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  In considering whether the complaint is sufficient to state a claim, the court will take all material allegations as true and construe them in the light most favorable to the plaintiff. *See NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986).  The court, however, is not required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  A formulaic recitation of a cause of action with conclusory allegations is not sufficient; a plaintiff must plead facts showing that a violation is plausible, not just possible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009) (citing *Twombly*, 550 U.S. at 555).

        "Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion.  However, material which is properly submitted as part of the complaint may be considered on a motion to dismiss." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citation omitted).  Similarly, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss" without converting the motion to dismiss into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994).  Moreover, under Federal Rule of Evidence 201, a court may take judicial notice of "matters of public record." *Mack v. S. Bay Beer Distribs., Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986).  Otherwise, if the district court

1    considers materials outside of the pleadings, the motion to dismiss is converted into a motion for

2    summary judgment. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th

3    Cir. 2001).

4    **III.    ANALYSIS**

5        **A.    Reconsideration**

6        Defendants make nine bullet-point objections to the Order and argue that they did not

7    have time to register these objections before the Court entered the Order.  Defendants had an

8    opportunity to object to the order.  Although the Court entered the Order (with amendments) four

9    days after Plaintiffs submitted it, Defendants had already objected to Plaintiffs' earlier proposed

10   order, which the Court had rejected. (*See* Objections, ECF No. 22).  Defendants filed their

11   objections to Plaintiffs' first proposed order the day after Plaintiffs served the first proposed

12   order upon them and in fact earlier in the same day that Plaintiffs filed the first proposed order

13   into the docket.  So, actually, it is not even formally true that Defendants did not have an

14   opportunity to object to the second proposed order, as the Court approved it (with amendments)

15   four days after Plaintiffs filed it into the docket—a filing of which Defendants had automatic

16   notice under the electronic filing system.  Still, Defendants are correct that four days is a short

17   amount of time, and the Court will address their objections in detail now.

18       First, Defendants object to footnote 1 of the Order, which repeats statements the Court

19   made in its previous rulings that the Minnesota Panel had ruled in favor of Wasson in 2002 and

20   that the last authoritative tribal ruling was the Minnesota Panel's ruling that Wasson, Bills, and

21   three now-deceased persons comprised the Council.  Defendants argue that the first statement is

22   inconsistent with the second and should be stricken.  The Court denies this request.  The

23   statement is dictum and is correct, in any case: Wasson was the appellant in the case that went to

24   the Minnesota Panel by stipulation in the Inter-tribal Court of Appeals of Nevada, and the

25   Minnesota Panel overruled the Winnemucca Tribal Court's ruling in favor of Bills.

1    Second, Defendants object to finding 2 which states that Plaintiffs are likely to suffer

2    irreparable harm via the lack of social services due to recognized tribes.  Defendants argue, and

3    support by affidavit, that social services are provided to the Colony through the Ft. McDermitt

4    Tribe. (*See* Brown Decl. ¶ 5, Feb. 3, 2012, ECF No. 58, at 5).  But the bare provision of services

5    is only part of the problem.  The Colony's members have been deprived of their self-governance

6    by their inability to manage their own relationship with the United States.  Colony members are

7    not guaranteed the ability to control their relationship with the United States through the Ft.

8    McDermitt Tribe or to request, deny, or otherwise manage the services available to them as a

9    federally recognized tribe.  They have been put at the mercy of another tribe with respect to these

10   services.  Defendants might as well argue that there is no harm because the Colony's members

11   are being provided with private charity from non-Indians in Winnemucca comparable to the

12   services they would otherwise receive.  It is the harm to self-governance that is most important

13   here.

14   Third, Defendants object to the statement that there is irreparable harm from the inability

15   to engage in self-sustaining economic activity on colonial land.  Defendants note that Plaintiffs

16   were only ejected from the Hanson Street Smoke Shop one time, and that the South Street

17   Smoke Shop is operational.  But this is the problem.  The reason there was only one ejection

18   from the Hanson Street Smoke Shop is presumably because Wasson and his contractors very

19   understandably didn't care to get involved in a melee with BIA officers if they returned.  Their

20   acquiescence to the commands of these federal officers cannot be used against them.  Plaintiffs

21   properly came to this Court for an injunction rather than fight it out with the BIA physically on

22   the land.  Also, the fact that the South Street Smoke Shop is operational is related to the colonial

23   leadership question.  If the South Street Smoke Shop is sovereign property, then so are the

24   profits.  If, as appears to be the case, those profits are currently going into the pockets of the

25   Ayer faction who currently occupy the shop, and if Wasson is the only remaining legitimate

1    member of the Council who is not in hiding, then the Ayer faction's operation of that smoke

2    shop is itself interference with the economic activity of the Colony.  Wasson, as Defendants are

3    aware, desires to eject the Ayer faction from the South Street Smoke Shop and operate it with his

4    own cohorts.  The Court has not permitted such an ejection preliminarily, though it will if

5    Wasson obtains a final judgment in his favor.

6            Fourth, Defendants ask the Court to strike the remainder of finding 2 because the

7    language was not in the Court's separate order.  The language is now in an order the Court has

8    signed, and a review of the Order shows that the language adopted in finding 2 also appears in

9    the Court's separate order in various places.

10           Fifth, Defendants object that finding 3 should be stricken because the Court did not make

11   the findings listed therein.  This is incorrect.  Finding 3 paraphrases the Minnesota Panel's

12   ruling, as the Court's separate orders have done in this case.  Also, the finding's statement that

13   the Minnesota Panel's ruling was a final adjudication by the tribal courts is correct.

14           Sixth, Defendants object to finding 4, which states that Wasson has been named by the

15   BIA as a legitimate representative of the Colony, and that he is a proper party to litigate the

16   present case.  Both statements are correct.  This statement is consistent with the fact that the

17   BIA, within its proper discretion (at the time), also recognized Bills as a legitimate

18   representative.  Defendants also note that the BIA via the referenced letter only recognized

19   Wasson and Bills for six days.  Defendants implicitly invoke the fourteen-day time limitation on

20   temporary restraining orders in federal court.  But the fact that the TRO has expired does not

21   make the statement in the Order incorrect.  Also, the Court will via the present order

22   preliminarily enjoin indefinite recognition. *See infra*.

23           Seventh, Defendants object to the statement in finding 4 that Wasson is a proper Plaintiff

24   in the absence of Bills because the Court has not issued any such finding.  But this finding is in

25   the very order to which Defendants object, as well as in the Court's separate orders.

Eighth, Defendants object to the statement in finding 1 that the BIA gave interim recognition to Wasson and Bills until a final adjudication.  Again, the BIA argues that it only gave that recognition for six days.  Again, the Court will enter a preliminary injunction via the present order.

Ninth, Defendants object to the part of finding 2 directing the BIA to refrain from interfering with Wasson and his agents because it is overbroad.  The Court will amend the order to indicate that it did not mean to imply that the BIA was barred from the land for the purpose of maintaining law and order generally, but only that it may not eject Wasson and his agents therefrom as if they were trespassers.

**B.       Intervention**

William Bills has finally made a proper appearance in the case and asks to intervene. The Court grants the motion.  Bills is one of the two remaining Council members recognized by the Minnesota Panel, and he, along with Wasson, is one of the two members of the council to which the BIA previously gave interim recognition.  Bills indicates that he desires to work with all parties.  However, he objects to the present suit and argues that Wasson may not unilaterally pursue it.  The Court foresaw this precise stalemate, and it now appears that the BIA must choose between Wasson and Bills in order to avoid abusing its discretion under *Goodface v. Grassrope*. *See* 708 F.2d 335, 338–39 (8th Cir. 1983).

**C.       Dismissal**

The Court has already denied a previous motion to dismiss, (*see* Mot. Dismiss, Oct. 31, 2011, ECF No. 36), that raised many of the same arguments offered in the present motion.  First, Defendants argue that because Wasson "does not represent the will of the tribe," he cannot bring the present action on behalf of the Colony.  The Court has already ruled that Wasson is a proper party to pursue an action under *Goodface* to force the BIA to recognize some tribal government because he claims to be a part of the tribal leadership denied recognition, and that although

1    neither the Court nor the BIA may attempt to sort out an internal leadership dispute, the Court

2    may decide under *Goodface* whether the BIA's choice of recognition is within its discretion.

3           Second, Defendants argue that the action must be dismissed for failure to join the Colony

4    Council as an indispensable party.  But Defendants cannot seriously complain of the failure to

5    join a party that Defendants themselves have refused to recognize, i.e., whose present existence

6    they essentially deny.  Based upon their previous arguments, no matter who were to appear to

7    represent the Colony, Defendants would then presumably argue that such person(s) did not

8    represent the Colony.  In any case, as Defendants note, the only possible members of the Council

9    under the authoritative Indian court rulings are Wasson and Bills, and the Court is now

10   permitting Bills to intervene, so all potentially indispensable parties will have joined.

11          Third, Defendants argue that only the Colony itself, not the Court or the BIA may

12   determine its leadership.  The Court has repeatedly affirmed this principle throughout this

13   litigation, but Defendants again ignore the availability of the *Goodface* remedy, i.e., that a Court

14   may rule under the APA whether the BIA's recognition of or failure to recognize a tribal

15   government is an abuse of its discretion under the APA, based not upon the Court's

16   interpretation of tribal election or other internal law, but upon the Court's recognition of tribal

17   court rulings deciding the dispute.

18          Fourth, Defendants argue that the Court has no jurisdiction to require the BIA to

19   recognize the tribal leadership.  The Court had addressed this argument in previous orders.  This

20   Court's rulings are in accord with Judges Sandoval's, Hicks's, and Reed's previous rulings

21   related to the present dispute.  Those courts, like this Court, affirmed that a non-Indian court may

22   not directly determine tribal leadership disputes and also recognized the viability and authority

23   of the Minnesota Panel's ruling, but those courts did not have occasion to determine a

24   *Goodface* remedy.

25          Fifth, Defendants argue that the tribal leadership question is currently the subject of

administrative proceedings.  The Court has already ruled that a decade of delay made that

remedy futile and ineffective, obviating the exhaustion requirement in this case.  Another judge

previously rejected jurisdiction for failure to exhaust administrative remedies, but that was a

decade ago.  The Court will now via the present litigation assist the BIA in expediting its

decision, by ordering it to finally make one.

Sixth, Defendants argue that the issue is precluded due to the *Magiera* case.  But as the

Court has already ruled, Judge Hicks dismissed the previous claim based upon failure to exhaust

administrative remedies *in 2001*.  As the Court explained in its previous order, not only is

exhaustion futile and ineffective at this stage, but Wasson would be entitled to Rule 60(b) relief

from the *Magiera* judgment itself based upon the further decade of delay.

Seventh and eighth, Defendants argue there is no basis for subject matter jurisdiction, and

that they are protected by sovereign immunity.  But the Court has already ruled in determining a

prior motion to dismiss that there is jurisdiction due to a waiver of sovereign immunity in the

present type of case under the APA.

Ninth, Defendants argue that the claim for declaratory judgment should be dismissed

because it is a measure of relief, not a cause of action.  However, as the Court has noted in

previous orders, Plaintiffs have made clear that their declaratory judgment claim is predicated

upon a review of the failure to recognize a colonial government under the APA.  There is

substance to this claim whether or not improperly labeled.

Tenth and finally, Defendants argue that joinder of "Doe" defendants is improper in

federal court.  This is correct, but because there are named Defendants, the inclusion of "Doe"

defendants is simply an inkblot on the pleadings with no procedural or substantive effect on the

action.  No putative defendant who has not been properly joined and served need worry that any

judgment of this Court will affect him.  Defendants ask the Court to dismiss the fictitious

defendants, but where a person has not been properly joined and served, he is simply not part of

the case, and there is therefore no such person in the case to dismiss.  Nor does the presence or

absence of "Doe" defendants have any effect on a plaintiff's ability to join additional defendants

later.  Ultimately, it is pointless to "dismiss" a nonexistent person from a case.  The Clerk's

office does not count such apparitions as parties in the electronic docket, and the Court does not

include them in its captions.  A remaining "Doe" defendant will not keep a case open if all

named defendants have had judgments entered for or against them.  A plaintiff may blot his

pleadings with fictitious defendants if he likes, but the only effect this has on a case in federal

court is to waste ink and demonstrate an attorney's lack of knowledge of federal procedure.  The

Court therefore respectfully disagrees with Judge Fee's admonition that such practice is

"dangerous."  *See Sigurdson v. Del Guercio*, 241 F.2d 480, 482 (9th Cir. 1956).  On the contrary,

so long as a federal court treats a "Doe" pleading for what it is (an inkblot), it is harmless.  Since

1956, the federal courts' practice has gone further than to dismiss fictitious defendants.  They are

now simply ignored.

**CONCLUSION**

IT IS HEREBY ORDERED that the Motion to Intervene (ECF No. 69) is GRANTED.

IT IS FURTHER ORDERED that the Motion for Reconsideration (ECF No. 58) is

GRANTED in part and DENIED it in part.  The Court's Order of January 31, 2012 is

AMENDED to note that the BIA is not barred from the Colony for the purpose of maintaining

law and order generally, although it may not eject Wasson and his agents as if they were

trespassers.

IT IS FURTHER ORDERED that the Motion to Dismiss (ECF No. 80) is DENIED.

IT IS FURTHER ORDERED that the BIA is preliminarily enjoined as follows.  The BIA

shall recognize one or more Council members as the government of the Winnemucca Indian

Colony until the conclusion of this action.  The BIA must make its decision consistent with

controlling tribal court rulings and may not simply choose Wasson and Bills again.  It is clear

this would be an abuse of discretion under *Goodface*, as Wasson and Bills are, as the Court predicted, in deadlocked opposition to one another.  The BIA should keep in mind that Bills appears to reside in San Joaquin, California, from where he likely cannot efficiently govern the Colony, whereas Wasson appears to live on or near the Colony and actively desires to rehabilitate the Colony.  The BIA shall indicate its decision by memorandum filing no later than seven (7) days from the entry of the present order into the electronic docket.

    IT IS SO ORDERED.

Dated this 9th day of July, 2012.

_____
            ROBERT C. JONES
      United States District Judge