**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| WINNEMUCCA INDIAN COLONY et al., ) <br> ) <br> Plaintiffs, ) <br> ) <br> vs. ) <br> ) <br> UNITED STATES OF AMERICA ex rel. ) <br> DEPARTMENT OF THE INTERIOR et al., ) <br> ) <br> Defendants. ) <br> ) | 3:11-cv-00622-RCJ-VPC <br><br> **ORDER AND INJUNCTION** |

This case arises out of the refusal of the U.S. Department of the Interior ("DOI") to recognize a tribal government of the Winnemucca Indian Colony (the "Colony") and the interference of the Bureau of Indian Affairs ("BIA") with the activities of a purported Council member on colonial land. The Court issued a temporary restraining order ("TRO") ordering the BIA to grant interim recognition to some person or persons but not ordering or restraining any BIA activity on the land. The Court then granted a preliminary injunction in part, "enjoin[ing] the BIA from interfering with activities on colonial land by Wasson and his agents" and noting that "[u]ntil some tribal court says otherwise or Bills appears and is heard to object (making the Council's vote 1–1), Wasson represents the will of the Council under the [Indian court's] ruling." The Court also permitted Plaintiffs to amend the Complaint, denied Defendants' motion to dismiss, and permitted Linda Ayer to intervene.

After the Court ordered the Bureau of Indian Affairs ("BIA") to recognize one or more persons as the governmental representative(s) of the Winnemucca Indian Colony (the "Colony") for the purposes of the Colony's relationship with the United States, the BIA recognized William Bills and Thomas Wasson.  When Bills intervened and noted his opposition to Wasson, the Court ruled that the recognition of both Wasson and Bills amounted to the recognition of no government at all and ordered the BIA to choose again. *See Goodface v. Grassrope*, 708 F.2d 335, 338–39 (8th Cir. 1983) (ruling that the recognition of two opposing factions amounts to a recognition of no government and is therefore an abuse of discretion under the APA).  The BIA chose to recognize Bills.  Wasson then asked the Court for a preliminary injunction enjoining the recognition of Bills.

The Court set the matter for oral argument.  The Court read from the August 16, 2002 order of the stipulated appellate panel for the 2000–2002 Wasson–Bills litigation (the "Minnesota Panel" or the "Panel"), which the Court has previously noted appears to be the last authoritative Indian court ruling concerning Council membership.[1]  The Minnesota Panel ruled that after Glenn Wasson's murder, the Council consisted of Acting Chairman William Bills and members-at-large Thomas Wasson, Elverine Castro, and Lucy Lowery. (*See* Minn. Panel Order 4, Aug. 16, 2002, ECF No. 115-4).  The Panel ruled that Thomas Wasson, Elverine Castro, and Lucy Lowery constituted a majority of the Council under the Colony Constitution and had properly appointed Sharon Wasson as a replacement for Glenn Wasson and had later properly elevated Sharon Wasson to Chairman. (*See id.* 9–10, 16).  The Panel also ruled that the Council's attempt to remove Bills from the Council was procedurally defective and therefore without effect. (*Id.* 10, 16).  After Lucy Lowery's death, the Council had properly declared a vacancy and replaced her with Tom Magiera. (*See id.* 11, 16).  The Council's attempt to disenroll or banish Bills to replace him with Andrea Davidson was ineffective. (*Id.*).  Therefore, the Council consisted of Chairman Sharon Wasson, Vice Chairman William Bills, and members-at-large

---

[1] In the absence of any valid, intervening Indian court ruling, the Minnesota Panel's ruling is res judicata. (*See* Summ. J. Order 8–9, Mar. 6, 2008, ECF No. 215 in Case No. 3:00-cv-00450 (Sandoval, J.)).  The Court of Appeals affirmed. (*See* Mem. Op., Oct. 14, 2010, ECF No. 244 in Case No. 3:00-cv-00450).

Thomas Wasson, Elverine Castro, and Tom Magiera (until his death). (*See id.* 16). Bills and Wasson are the only surviving members of the Council. The October 28, 2000 election was ruled invalid. (*See id.* 11, 16). Bills' later attempt to appoint a council on his own was ruled ineffective. (*See id.* 12, 16).

The Panel also ruled that the last authoritative Colony membership roll was the "List of 77" adopted by the Council in 1998, plus any enrollments accepted by the Council until the date of the Panel's order, August 16, 2002. (*See id.* 12–13, 18). The Panel noted that Shoshone were disproportionately represented on the Council and ordered the Council to take measures to address concerns of Paiutes that their enrollment applications would not be fairly treated due to bias. (*See id.* 13). The Panel also ruled that the attempted removal of Judge Swanson was ineffective. (*See id.* 18–19).

The basis the BIA gave for its decision to recognize Bills instead of Wasson was that Bills was the Vice Chairman of the Council and Wasson was only a member-at-large, and under the Colony Constitution and Bylaws, the Vice Chairman was to perform the duties of the Chairman in his absence. (*See* Bowker Letter, July 13, 2012, ECF No. 110, at 3). Having read the proposed order and considered the objections thereto, the Court rules that the decision by the BIA to recognize Bills on July 17, 2012 was an abuse of discretion and not in accordance with law, *see* 5 U.S.C. § 706(2)(A), because the BIA based its decision purely on its interpretation of tribal law, which is territory into which neither the BIA nor this Court is to tread. To do so would be for the United States to interfere impermissibly in sovereign Indian self-governance, no matter how clear the result appears to be to an outsider.[2] In the proper exercise of its discretion in a case such as the present one, where the controlling Indian judicial rulings still leave the BIA with a choice between two or more rival factions, the BIA ought not assume or attempt to

---

[2] For example, there could be some controlling piece of tribal common law concerning succession of leadership. The determination that the vice chairman or acting chairman should necessarily have a higher position than a member-at-large with respect to government-to-government relations itself requires an assumption about tribal law that is outside the scope of the BIA's discretion. The result may seem obvious in a traditional Western democracy, but tribal law may be very different. The succession of leadership in the Colony may turn on longevity, age, or some other factors unfamiliar to Western government, despite the Western-style titles of "chairman" and "vice chairman."

determine which of the rival factions has a better claim to leadership under tribal law (as opposed to tribal judicial rulings), but rather should look to the circumstances of its relationship with the parties. That is, which party can the BIA better work with to manage the Colony's federal aid and participation in federal programs on behalf of the tribe?[3] Because the BIA made its decision on improper grounds, i.e., its interpretation of tribal law, and made no attempt to justify its decision on any proper grounds, the Court need not rely on any direct analysis of which party is better able to work with the BIA to find that the BIA abused its discretion in selecting Bills.

Next, Ayer has asked the Court to order Thomas Wasson to show cause why he should not be held in contempt of the Court's Preliminary Injunction Order of January 10, 2012 (the "Order"). The Order stated that the BIA was not to eject Wasson or his cohorts from the Colony as if they were trespassers, nor prevent them from rehabilitating the Hanson Street Smoke Shop, but the Order also specifically stated that Wasson could not attempt to eject Ayer and her cohorts from the South Street Smoke Shop in a way that risked violence. Ayer alleges that Wasson and his cohorts have now broken into the Colony Administration Building and changed the locks. She alleges that the BIA allowed her into an office in the building to retrieve personal effects, but that after she locked herself in her office, the BIA arrested her. She also alleges that Wasson and his cohorts broke into the South Street Smoke Shop while it was closed (but while an employee was working there) and has begun operating the shop and selling the inventory that belongs to a third-party. The affidavit provided by Ayer's employee indicates that some unidentified persons broke the lock on the door of the South Street Smoke Shop after beating on it and claiming they had a "court order" giving Wasson possession of the shop, causing the employee to lock herself in an office in fear of her life. She alleges that the BIA has enforced Wasson's possession of the buildings and has not permitted the Ayer group to return.

The Court grants the motion. The Court ruled orally on September 4, 2012 that the BIA's selection of Bills had been an abuse of discretion, and that it must recognize Wasson. The BIA's

---

[3] Under the circumstances, it appears that Wasson is the better choice, though the Court does not base its ruling on this. For example, Wasson is attempting actively to govern the Colony and has pursued Colony leadership diligently. By contrast, Bills appears to reside many hundreds of miles from the Colony in another state, and the BIA was not even able to locate him until nearly a year after the present lawsuit was initiated.

support of Wasson as against Ayer in these confrontations is probably consistent with the Court's September 4, 2012 oral ruling.  However, it does appear that Wasson and his cohorts are in contempt of the Court's previous order preventing exactly this kind of confrontation until the conclusion of the action.  If the Ayer group wishes directly to challenge Wasson's possession of real or personal property that allegedly belongs to Ayer or a third party, however, those are common law claims that may presumably be brought in the tribal or state courts.  This Court's jurisdiction extends only to the recognition dispute between Wasson, Bills, Ayer, and the Government.  The Court does not have jurisdiction directly to determine unlawful detainer or conversion claims as between Wasson and Ayer.

## CONCLUSION

IT IS HEREBY ORDERED that the Motion for Preliminary Injunction (ECF No. 115) is GRANTED.  The BIA shall recognize Thomas Wasson as the representative of the Council until the conclusion of this action.

IT IS FURTHER ORDERED that the Motion for Temporary Restraining Order (ECF No. 114) is DENIED as moot.

IT IS FURTHER ORDERED that the Motion for Leave to File Reply (ECF No. 131) is GRANTED, and the Motion to Strike (ECF No. 132) is DENIED.

IT IS FURTHER ORDERED that the Motion for Order to Show Cause (ECF No. 144) is GRANTED.  The parties shall contact the Court to schedule a mutually acceptable date for a hearing.

IT IS FURTHER ORDERED that the Motion for Possession of Property (ECF No. 147) is DENIED.

IT IS FURTHER ORDERED that Thomas Wasson: (1) appoint a membership committee that is **equal** parts Shoshone and Paiute; (2) receive membership applications from all persons desiring membership in the Winnemucca Indian Colony; (3) begin with the List of 77, plus members accepted through August 16, 2002; (4) delay the scheduled election of October 20, 2012 for six months in order for the applications to be reviewed, a membership list to be posted and published, and for any potential member who is refused membership to be given the right to

appeal to a neutral and unbiased tribal judge and to the Inter Tribal Court of Appeals of Nevada; and (5) to hold an election after all membership appeals are exhausted.

IT IS SO ORDERED.

Dated this 24th day of September, 2012.

_____
ROBERT C. JONES
United States District Judge