**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| WINNEMUCCA INDIAN COLONY et al., ) <br> ) <br> Plaintiffs, ) <br> ) <br> vs. ) <br> ) <br> UNITED STATES OF AMERICA ex rel. ) <br> DEPARTMENT OF THE INTERIOR et al., ) <br> ) <br> Defendants. ) <br> ) | 3:11-cv-00622-RCJ-VPC <br><br> **ORDER** |

This case arises out of the refusal of the U.S. Department of the Interior ("DOI") to recognize a tribal government of the Winnemucca Indian Colony (the "Colony") and the interference of the Bureau of Indian Affairs ("BIA") with the activities of a purported Council member on colonial land. The Court issued a temporary restraining order ("TRO") ordering the BIA to grant interim recognition to some person or persons but not ordering or restraining any BIA activity on the land. The Court then granted a preliminary injunction in part, "enjoin[ing] the BIA from interfering with activities on colonial land by Wasson and his agents" and noting that "[u]ntil some tribal court says otherwise or Bills appears and is heard to object (making the Council's vote 1–1), Wasson represents the will of the Council under the [Indian court's] ruling." The Court also permitted Plaintiffs to amend the Complaint, denied Defendants' motion to dismiss, and permitted Linda Ayer to intervene.

After the Court ordered the Bureau of Indian Affairs ("BIA") to recognize one or more persons as the governmental representative(s) of the Winnemucca Indian Colony (the "Colony") for the purposes of the Colony's relationship with the United States, the BIA recognized William Bills and Thomas Wasson.  When Bills intervened and noted his opposition to Wasson, the Court ruled that the recognition of both Wasson and Bills amounted to the recognition of no government at all and ordered the BIA to choose again. *See Goodface v. Grassrope*, 708 F.2d 335, 338–39 (8th Cir. 1983) (ruling that the recognition of two opposing factions amounts to a recognition of no government and is therefore an abuse of discretion under the APA).  The BIA chose to recognize Bills.  Wasson then asked the Court for a preliminary injunction enjoining the recognition of Bills.

The Court set the matter for oral argument.  The Court read from the August 16, 2002 order of the stipulated appellate panel for the 2000–2002 Wasson–Bills litigation (the "Minnesota Panel" or the "Panel"), which the Court has previously noted appears to be the last authoritative Indian court ruling concerning Council membership.[1]  The Minnesota Panel ruled that after Glenn Wasson's murder, the Council consisted of Acting Chairman William Bills and members-at-large Thomas Wasson, Elverine Castro, and Lucy Lowery. (*See* Minn. Panel Order 4, Aug. 16, 2002, ECF No. 115-4).  The Panel ruled that Thomas Wasson, Elverine Castro, and Lucy Lowery constituted a majority of the Council under the Colony Constitution and had properly appointed Sharon Wasson as a replacement for Glenn Wasson and had later properly elevated Sharon Wasson to Chairman. (*See id.* 9–10, 16).  The Panel also ruled that the Council's attempt to remove Bills from the Council was procedurally defective and therefore without effect. (*Id.* 10, 16).  After Lucy Lowery's death, the Council had properly declared a vacancy and replaced her with Tom Magiera. (*See id.* 11, 16).  The Council's attempt to disenroll or banish Bills to replace him with Andrea Davidson was ineffective. (*Id.*).  Therefore, the Council consisted of Chairman Sharon Wasson, Vice Chairman William Bills, and members-at-large

---

[1] In the absence of any valid, intervening Indian court ruling, the Minnesota Panel's ruling is res judicata. (*See* Summ. J. Order 8–9, Mar. 6, 2008, ECF No. 215 in Case No. 3:00-cv-00450 (Sandoval, J.)).  The Court of Appeals affirmed. (*See* Mem. Op., Oct. 14, 2010, ECF No. 244 in Case No. 3:00-cv-00450).

Thomas Wasson, Elverine Castro, and Tom Magiera (until his death). (*See id.* 16).  Bills and Wasson are the only surviving members of the Council.  The October 28, 2000 election was ruled invalid. (*See id.* 11, 16).  Bills' later attempt to appoint a council on his own was ruled ineffective. (*See id.* 12, 16).

The Panel also ruled that the last authoritative Colony membership roll was the "List of 77" adopted by the Council in 1998, plus any enrollments accepted by the Council until the date of the Panel's order, August 16, 2002. (*See id.* 12–13, 18).  The Panel noted that Shoshone were disproportionately represented on the Council and ordered the Council to take measures to address concerns of Paiutes that their enrollment applications would not be fairly treated due to bias. (*See id.* 13).  The Panel also ruled that the attempted removal of Judge Swanson was ineffective. (*See id.* 18–19).

The basis the BIA gave for its decision to recognize Bills instead of Wasson was that Bills was the Vice Chairman of the Council and Wasson was only a member-at-large, and under the Colony Constitution and Bylaws, the Vice Chairman was to perform the duties of the Chairman in his absence. (*See* Bowker Letter, July 13, 2012, ECF No. 110, at 3).  The Court ruled that the decision by the BIA to recognize Bills on July 17, 2012 was an abuse of discretion and not in accordance with law, *see* 5 U.S.C. § 706(2)(A), because the BIA based its decision purely on its interpretation of tribal law, which is territory into which neither the BIA nor this Court is to tread.  To do so would be for the United States to interfere impermissibly in sovereign Indian self-governance, no matter how clear the result appears to be to an outsider.[2]  In the proper exercise of its discretion in a case such as the present one, where the controlling Indian judicial rulings still leave the BIA with a choice between two or more rival factions, the BIA ought not assume or attempt to determine which of the rival factions has a better claim to leadership under

---

[2]For example, there could be some controlling piece of tribal common law concerning succession of leadership.  The determination that the vice chairman or acting chairman should necessarily have a higher position than a member-at-large with respect to government-to-government relations itself requires an assumption about tribal law that is outside the scope of the BIA's discretion.  The result may seem obvious in a traditional Western democracy, but tribal law may be very different.  The succession of leadership in the Colony may turn on longevity, age, or some other factors unfamiliar to Western government, despite the Western-style titles of "chairman" and "vice chairman."

tribal law (as opposed to tribal judicial rulings), but rather should look to the circumstances of its relationship with the parties. That is, which party can the BIA better work with to manage the Colony's federal aid and participation in federal programs on behalf of the tribe?[3] Because the BIA made its decision on improper grounds, i.e., its interpretation of tribal law, and made no attempt to justify its decision on any proper grounds, the Court did not have to rely on any direct analysis of which party was better able to work with the BIA to find that the BIA abused its discretion in selecting Bills.

Ayer also asked the Court to order Thomas Wasson to show cause why he should not be held in contempt of the Court's Preliminary Injunction Order of January 10, 2012 (the "Order"). The Order stated that the BIA was not to eject Wasson or his cohorts from the Colony as if they were trespassers, nor prevent them from rehabilitating the Hanson Street Smoke Shop, but the Order also specifically stated that Wasson could not attempt to eject Ayer and her cohorts from the South Street Smoke Shop in a way that risked violence. Ayer alleged that Wasson and his cohorts have now broken into the Colony Administration Building and changed the locks. She alleged that the BIA allowed her into an office in the building to retrieve personal effects, but that after she locked herself in her office, the BIA arrested her. She also alleged that Wasson and his cohorts broke into the South Street Smoke Shop while it was closed (but while an employee was working there) and has begun operating the shop and selling the inventory that belongs to a third-party. The affidavit provided by Ayer's employee indicated that some unidentified persons broke the lock on the door of the South Street Smoke Shop after beating on it and claiming they had a "court order" giving Wasson possession of the shop, causing the employee to lock herself in an office in fear of her life. She alleged that the BIA had enforced Wasson's possession of the buildings and had not permitted the Ayer group to return.

The Court ordered Thomas Wasson, but not the BIA, to show cause. At the show cause hearing, the Court did not hold any party in contempt but discussed the progress of the

---

[3]Under the circumstances, it appears that Wasson is the better choice, though the Court does not base its ruling on this. For example, Wasson is attempting actively to govern the Colony and has pursued Colony leadership diligently. By contrast, Bills appears to reside many hundreds of miles from the Colony in another state, and the BIA was not even able to locate him until nearly a year after the present lawsuit was initiated.

enrollment process and ordered Wasson to submit a proposed order directing a local newspaper to publish information concerning tribal enrollment procedures. Wasson submitted a proposed order, to which Ayer objected and submitted her own proposed order. Ayer had two principal objections. First, Wasson's proposed announcement stated that applications were to be submitted to "Thomas Wasson, Chairman, Jody Rojo, Katherine Hasbrouck, Misty Rojo, and Eric Magiera as the Council for the Winnemucca Indian Colony . . . ." Ayer argued that the Court had never ruled that these people (apart from Wasson) are members of the Council, or even that Wasson was the Chairman, but only that Wasson and Bills are on the Council, and that under *Goodface v. Grassrope*, and based upon the circumstances in this case, the Government must deal with Wasson as the legitimate representative of the Council for the purpose of U.S.–Tribal relations until the action is concluded. Second, the announcement included the unrelated proclamation that "Wasson and his Council" are the recognized government of the Colony and that all public and private entities should treat it as such. The Court issued Wasson's order.

The Court later refused to reconsider for the sake of efficiency but reiterated that Wasson should be clear that the enrollment applications are to be submitted to the Enrollment Committee for consideration, as appointed by him according to the Court's previous order,[4] i.e., any applications received by the Council are to be immediately forwarded to the Committee.

Three more motions are now pending before the Court. First, Mr. Roger Gifford has filed a motion to proceed *in forma pauperis* so that he may present the attached motion asking the Court to order the BIA to return certain property of his seized (tools) from Colony land. Second, the United States has moved to strike the application, because Gifford is not a party. The Court agrees. If Gifford wishes to file a Fourth Amendment unreasonable seizure (or Fifth Amendment takings) claim against the BIA, he must do it in a separate proceeding.

Third, Ayer has again asked the Court to order Wasson to show cause why he should not be held in contempt. Ayer objects to the way Wasson has been conducting the enrollment proceedings. In sum, she argues that Wasson is manipulating the proceedings to prevent

---

[4]At the show cause hearing, Wasson indicated that the Enrollment Committee consisted of one Shoshone person, one Paiute person, and one person of equal Shoshone and Paiute ancestry.

notifying Ayer–friendly persons from receiving notice of the enrollment proceedings and instituting procedures directly contrary to the procedures this Court mandated.

As to the notice issue, Ayer alleges that when the Wasson group took over the administration building, Ayer lost access to documents with names and addresses of Ayer–friendly persons who may be eligible for enrollment, and despite this Court's clear order at the last show cause hearing (and Attorney Hearne's representation that the documents were in "secure boxes" and her promise to comply with the Court's turn-over order), Attorney Hearne has given Attorney Williams only one two-inch binder of membership applications. She has failed to turn over various Indian Census records, Certificates of Indian Blood Decree, and birth certificates that were in other black binders. Ayer has notified some persons to protect themselves from possible identity theft, because these personal records have not been handed over. The Court will hold a show cause hearing, at which Wasson may explain himself.

As to the procedures issue, Ayer alleges that Wasson has published an enrollment ordinance (Ordinance 310a) that has never been properly adopted by any Council or approved by the BIA. Enrollment ordinances must be approved by the BIA, and the latest such ordinance with approval is Ordinance 310. Ordinance 310a states that the Council is the determining body for Colony membership and that its decision is final. The Court need not attempt to determine whether Ordinance 310a was properly passed or adopted, however, because Ayer is correct that it is in direct conflict with the Court's repeated oral and written orders. As Ayer correctly notes, the Court ruled that the applications are to go to the Enrollment Committee for determination, not the Interim Council, which is a care-taking body for the purposes of this action. And as Ayer also correctly notes, the Committee's decisions are appealable to the Tribal Judge(s) identified at the last hearing, and then to the Inter-Tribal Court of Appeals of Nevada, assuming that Court will accept jurisdiction. Any contrary procedures published by the Committee or the Council are void as inconsistent with this Court's orders.

///
///
///

## CONCLUSION

IT IS HEREBY ORDERED that the Application to Proceed In Forma Pauperis (ECF No. 171) is DENIED.

IT IS FURTHER ORDERED that the Motion to Strike (ECF No. 172) is GRANTED.

IT IS FURTHER ORDERED that the Motion for Show Cause Hearing (ECF No. 176) is GRANTED.

IT IS FURTHER ORDERED that the Motion for Show Cause Hearing at which Thomas Wasson shall SHOW CAUSE why he should not be held in contempt of this Court's orders is set on Tuesday, May 28, 2013 at 11:00 AM, in Reno Courtroom 6, before Chief Judge Robert C. Jones.

IT IS SO ORDERED.

Dated this 25th day of April, 2013.

_____
ROBERT C. JONES
United States District Judge