**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | | |
|---|---|---|
| WINNEMUCCA INDIAN COLONY et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | 3:11-cv-00622-RCJ-CBC |
| | ) | |
| UNITED STATES OF AMERICA ex rel. | ) | **ORDER** |
| DEPARTMENT OF THE INTERIOR et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This case arises out of the refusal of the Bureau of Indian Affairs ("BIA") to recognize a tribal government of the Winnemucca Indian Colony. The Court ordered the BIA to recognize an interim chairman and ultimately acknowledged the results of tribal enrollment, elections, and litigation relating thereto. Plaintiffs Winnemucca Indian Colony and Judy Rojo have now asked the Court to award attorney's fees under the Equal Access to Justice Act ("EAJA"). 28 U.S.C. § 2412.

Plaintiffs are clearly the prevailing party. They requested injunctive and declaratory relief concerning the tribal leadership and received it. The Colony is eligible for an EAJA award if its net worth did not exceed $7,000,000 and if it had no more than 500 employees at the time of filing. *Id.* at § 2412(d)(2)(B)(ii). Plaintiffs have the burden of proof. *Thomas v. Peterson*, 841 F.2d 332, 337 (9th Cir. 1988). The Court accepts Judy Rojo's affidavit verifying the relevant facts, (Rojo Aff., ECF No. 305-1, at 1), and rejects the BIA's argument that Rojo's declaration is not valuable because she was not the chairperson at the time of filing (and therefore lacks

personal knowledge of the Colony's net worth at that time).  There is no reason why such

knowledge would be exclusive to the chairperson, and the BIA does not even suggest who the

proper chairperson to inquire of would be.  Rojo has attested to the relevant facts under oath, and

the BIA has adduced no contrary evidence.  Nor does it matter what Rojo's personal net worth

was at the time of filing.  Under EAJA, it is the net worth of the real party in interest that matters,

and a member of an organization is only a real party in interest separate from the organization for

the purposes of EAJA if the member would be liable for attorney's fees in the absence of an

award, regardless of whether the member receives a benefit from a favorable merits ruling. *Love

v. Reilly*, 924 F.2d 1492, 1494 (9th Cir. 1991).  The record in this case shows that it is the Colony

itself that is liable for attorney's fees, not Rojo personally. (Colony Resolution 2018-10-08, ECF

No. 305-1, at 5; Colony Mins., ECF No. 305-1, at 7).

The remaining question is whether the BIA's position was "substantially justified." *Id.*

§ 2412(d)(1)(A).  The BIA defended primarily on the basis that the Court lacked subject matter

jurisdiction over the action.  The Court's jurisdiction to require the BIA to recognize a tribal

government under the APA was unclear at the time.  The Court relied upon Eighth Circuit

precedent, *Goodface v. Grassrope*, 708 F.2d 335 (8th Cir. 1983), there being none in this Circuit.

The Ninth Circuit's opinion approving jurisdiction under the APA in cases like *Goodface* and the

present case issued after the BIA had lost on the issue here. *Alto v. Black*, 738 F.3d 1111,

1123–25 & n.9 (9th Cir. 2013) (citing *id.* at 339).  The BIA reiterated its position on jurisdiction

in at least one brief thereafter, but only to preserve the argument, and not in any way requiring

Plaintiffs to expend additional attorney labor. (Resp. 1–2, ECF No. 251).

Still, as Plaintiffs correctly note, the BIA's position was only "substantially justified" for

the purposes of EAJA if both the BIA's "original action" and its "defen[se]" of its original action

in court were substantially justified. *United States v. Marolf*, 277 F.3d 1156, 1161 (9th Cir.

2002).  Here, only the jurisdictional defense was substantially justified (until 2013).  The

1  underlying refusal of the BIA to recognize a tribal government of a congressionally recognized

2  tribe (and the failure to attempt to sort out any dispute) for several years was not substantially

3  justified.  Tribal leadership disputes can be complex and acrimonious, but so long as Congress

4  continues to recognize dependent tribal sovereigns within America's borders, the appropriate

5  executive agency has a trust duty to those tribes, and taking sides in tribal leadership disputes, at

6  least so far as necessary to ensure diplomatic contact, is a price of that continuing policy that the

7  executive branch must pay.  As noted, the BIA was only required to make a rational decision as

8  to which person(s) to recognize as the tribal representative(s).  It was an unjustified abdication of

9  this duty to refuse to treat with the Winnemucca Indian Colony at all rather than choose which

10  person(s) to recognize.

11       Moreover, when ordered to select one or more representatives, the BIA then chose to

12  recognize two persons who were fiercely opposed to one another (Wasson and Bills, the latter of

13  whom was accused by the former of having murdered the former's father in order to assume

14  leadership of the Colony).  This action was also unjustified and an abuse of discretion under the

15  APA, because choosing to recognize both Wasson and Bills was tantamount to making no choice

16  at all.  No rational person would expect the two to act harmoniously.  Upon being ordered to

17  choose again, the BIA again made an unjustified choice, choosing Bills, based not on any

18  supposed ability to better work with Bills (who apparently, unlike Wasson, resided not on or near

19  the Colony but in California) for the benefit of the Colony according to the Govrnment's trust

20  duty, but based on the BIA's interpretation of tribal law, which was an improper consideration.

21  In summary, the Court finds that the BIA's underlying actions in this case were not substantially

22  justified.

23       Next, the BIA objects to the claimed hours as excessive.  It seeks to exclude all hours not

24  directly related to opposing the BIA's own motions, i.e., attorney labor related to intervenors or

25  in the tribal courts arising out of this lawsuit.  It also seeks to exclude attorney labor related to

1  Plaintiffs' unsuccessful motions or oppositions and to reduce attorney labor for motions related

2  to multiple parties in proportion to their number.  The Court denies the motion.  The Court does

3  not find any unsuccessful motions to have been so frivolous so as to exclude the related labor

4  from the fee award in a case where there was overall success.  Nor does it make sense to exclude

5  attorney labor necessarily expended in the tribal courts under this Court's orders or litigating

6  against third parties in the present action, when that labor was ultimately necessitated by the

7  BIA's unjustified underlying actions in the first instance.  As the Supreme Court has stated in no

8  uncertain terms:

9  > We emphasize, as we have before, that the determination of fees "should not result in a second major litigation."  The fee applicant . . . must, of course, submit appropriate documentation to meet "the burden of establishing entitlement to an award."  But trial courts need not, and indeed should not, become green-eyeshade accountants.  The essential goal in shifting fees . . . is to do rough justice, not to achieve auditing perfection.  So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time.  And appellate courts must give substantial deference to these determinations, in light of "the district court's superior understanding of the litigation."  We can hardly think of a sphere of judicial decisionmaking in which appellate micromanagement has less to recommend it.

15  *Fox v. Vice*, 563 U.S. 826, 838 (2011) (citations omitted).  Plaintiffs' attorney has provided

16  detailed records of attorney labor, and the Court finds it not to be excessive given the difficulty of

17  this case and the amount of effort needed to accomplish Plaintiffs' goals both here and in the

18  tribal fora pursuant to this Court's orders.

19  Finally, the BIA objects to awarding an enhanced rate of attorney labor beyond the

20  statutory rate of $125/hr.  Plaintiffs reply that they seek no enhanced rates but only cost of living

21  adjustments to the statutory rate under § 2412(d)(2)(A) according to *Thangaraja v. Gonzales*,

22  428 F.3d 870, 876–77 (9th Cir. 2005) and the Circuit Advisory Committee Note to Ninth Circuit

23  Rule 39-1.6 (citing *Thangaraja*).  The Court agrees with Plaintiffs that the requested cost of

24  living adjustments are appropriate under the statute and Circuit law.  And the resulting rates are

25  in fact modest given the difficulty of the case and the results achieved.

**CONCLUSION**

IT IS HEREBY ORDERED that the Motion for Attorney's Fees (ECF No. 305) is GRANTED. Attorneys fees are awarded in the amount of $102,917.97. Plaintiffs should separately ask the Clerk to tax costs.

IT IS SO ORDERED.

Dated this 24th day of January, 2019.

_____
ROBERT C. JONES
United States District Judge